IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| vs. | No. 24 CR 50033<br>Hon. Lindsay C. Jenkins |
| DEMARIO D. FLEMMING | |

### MOTION TO DISMISS THE INDICTMENT
### ON SECOND AMENDMENT GROUNDS

DEMARIO D. FLEMMING, by his attorney Hannah V. Garst, moves pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure to dismiss the indictment against him. Mr. Flemming is charged pursuant to 18 U.S.C. § 922(g)(1) with possessing a firearm after sustaining a felony conviction. Both facially and as applied to the facts of this case, § 922(g)(1) is unconstitutional, and he is legally innocent of the crime charged. The Supreme Court's "text and tradition" approach to the Second Amendment, outlined and explained in *Atkinson v. Garland*, 70 F.4th 1018 (7th Cir. 2023), *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 103 (3d Cir. 2023) (en banc), *cert. granted, vacated* No. 23-374 July 2, 2024 2024 WL 3259961[1], *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), compels the

---

[1] *Range* was decided before *Rahimi*. But its discussions of the plain text of the Second Amendment to reject a limitation imposed by "law abiding, responsible citizens" remain highly persuasive authority. Indeed, *Range* has been bolstered by *Rahimi*'s rejection of the Government's "responsible" argument in that case, unlike contrary Circuit authority—including *United States v. Gay*, 98 F.4th 843 (7th Cir. 2024)—which gave undue weight to that phrasing.

1

conclusion that § 922(g)(1) is unconstitutional in Mr. Flemming's case. Thus, pursuant to Fed. R. Crim. P. 12(b)(1), this Court should dismiss this case with prejudice.

On June 7, 2023, the Third Circuit became the first federal appellate court to hold 18 U.S.C. § 922(g)(1) unconstitutional in an as-applied challenge. *See Range*, 69 F.4th 96. The *Range* opinion interpreted the Supreme Court's recent decision in *Bruen*. On June 20, 2023, the Seventh Circuit issued its opinion in *Atkinson* where it held that the government's historical analysis of the constitutionality of § 922(g)(1) fell "well short of *Bruen*'s demands." *Atkinson*, 70 F.4th at 1022. While *Atkinson* ultimately remanded the case to allow the government to attempt to develop more persuasive historical evidence, the decision also established that the government has so far failed to "'affirmatively prov[e] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Id.* at 1024 (quoting *Bruen*, 142 S. Ct. at 2127). In addition, the Seventh Circuit Court of Appeals recently heard oral argument on this issue in *United States v. Prince*, No. 23-3155.

As for a facial challenge, § 922(g)(1) applies to any individual with a prior conviction punishable by imprisonment exceeding one year, virtually regardless of circumstance. It is concerned with, or "actually authorizes," prosecutions of one who possessed a firearm, again regardless of circumstance. The prosecutions that § 922(g)(1) authorizes are thus unconstitutional because their purpose is to broadly disarm all people with felony convictions permanently. That some felony convictions, or some conduct, might sustain a different prosecution under a different statute cannot save § 922(g)(1) after *Rahimi*, 144 S. Ct. 1889. Mr. Flemming moves to dismiss the indictment.

2

## PROCEDURAL BACKGROUND

On September 10, 2024, the grand jury charged Mr. Flemming with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Dkt. #3. Mr. Flemming has seven prior felony convictions, including illegal distribution of a controlled substance, possession of a controlled substance (two separate convictions), residential burglary & manufacture/delivery of a controlled substance, unlawful transport of a firearm, domestic battery, and aggravated fleeing. Mr. Flemming remains in custody pending the outcome of this case.

## ARGUMENT

Recent appellate and Supreme Court jurisprudence makes clear that § 922(g)(1) is unconstitutional both facially and as applied to Mr. Flemming. In *Bruen*, the Court rejected the "intermediate scrutiny" framework that appellate courts, including the Seventh Circuit, had previously applied to Second Amendment challenges. *Bruen*, 142 S. Ct. at 2127 (rejecting the two-step test set out in *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019) because it "involved one step too many"). In its place, *Bruen* explained that

> the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2129–30 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 51 n.10 (1961)).

In *Atkinson*, the Seventh Circuit acknowledged both that *Bruen* abrogated its previous precedents applying a two-step test and that the government may defend the

3

constitutionality of a gun regulation only "by proving that it is 'consistent with this Nation's historical tradition of firearm regulation.'" *Atkinson*, 70 F.4th at 1020 (citing *Bruen*, 142 S. Ct. at 2126).

Here, Mr. Flemming's conduct—the possession of a firearm—is covered by the plain text of the Second Amendment and is presumptively Constitutionally protected. As a result, the government can only prevail if it can "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen,* 142 S. Ct. at 2127; *see also Atkinson,* 70 F.4th at 1019. But it cannot. The historical record from the time of the founding demonstrates the exact opposite: that non-violent felons who completed their punishments were allowed to possess firearms just like any other member of the community. *See* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 Wyo. L. Rev. 249, 283–285 (2020) (collecting examples of this). Laws prohibiting nonviolent felons from bearing arms did not begin to appear, in any form, until the twentieth century. *See* C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 708 (2009). This historical evidence means that the government cannot carry its burden to establish the constitutionality of Section 922(g)(1) as applied to offenders like Mr. Flemming.

**A.     The plain text of the Second Amendment covers conduct criminalized by Section 922(g)(1).**

The Second Amendment protects "the right of the people to keep and bear arms[.]" U.S. Const. amend. II. As the Supreme Court has explained, this plain language

"guarantee[s] the individual right to possess and carry weapons[.]" *D.C. v. Heller*, 554 U.S. 570, 592 (2008). Supreme Court precedent also indicates that individuals who have prior felony convictions are part of "the people" protected by the Second Amendment.

Specifically, in *Heller*, the Supreme Court noted that the term "the people" appears not just in the Second Amendment, but in the First and Fourth Amendments as well. *Id.* at 579. And the *Heller* Court found that the repeated use of this term reflected a consistent meaning—namely, that "[a]ll three of these instances unambiguously refer to individual rights, not 'collective' rights, or rights that may be exercised only through participation in some corporate body." *Id.* Based on this, the *Heller* Court held that the language of the clause creates "a strong presumption that the Second Amendment right is exercised individually *and belongs to all Americans*." *Id.* at 581 (emphasis added).

And while the *Heller* decision also included dicta emphasizing the Second Amendment's protections for "law-abiding, responsible citizens," *id.* at 635, the Seventh Circuit has rejected the notion that this dicta limits the scope of the Second Amendment. Specifically, in a case issued prior to *Bruen*, the Seventh Circuit held that:

> While some of *Heller*'s language does link Second Amendment rights with the notions of "law-abiding citizens" and "members of the political community," *see Heller*, 554 U.S. at 580, 625, 128 S.Ct. 2783, those passages did not reflect an attempt to define the term "people." We are reluctant to place more weight on these passing references than the Court itself did.

*United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015). Instead—following the actual holding of the *Heller* decision—the Seventh Circuit has concluded that "the term 'the people' in the Second Amendment has the same meaning as it carries in other parts of the Bill of Rights[.]" *Id.* at 670.

5

Nothing in the Supreme Court's recent *Bruen* decision casts doubt on the understanding articulated in *Meza-Rodriguez*. *Bruen* reiterated *Heller*'s holding that "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *Bruen*, 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581). And while *Bruen*—like *Heller* itself—also contained dicta emphasizing the Second Amendment's protections for "law abiding, responsible citizens," those passages do not purport to define the term "the people." As a result, for the reasons the Seventh Circuit already identified in *Meza-Rodriguez*, the Court should find "the people" protected by the Second Amendment are the same as those protected by the First and Fourth Amendments. That means that Mr. Flemming is presumptively covered by the Second Amendment's plain text.

The Third Circuit reached this same conclusion in its *en banc* opinion in *Range*. There, the appellate court cited four reasons why the "law-abiding" language was dicta and did not compel a conclusion that felons fall outside the "people" to whom the Second Amendment refers. First, the court noted that the criminal histories of the plaintiffs in *Heller*, *McDonald v. Chicago*, 561 U.S. 742, 780 (2010), and *Bruen* were not at issue. *Range*, 69 F.4th at 101. Second, the court pointed to *Heller's* discussion of the term "the people" in multiple amendments. It reasoned that "[u]nless the meaning of the phrase 'the people' varies from provision to provision—and the Supreme Court in *Heller* suggested it does not—to conclude that Range is not among 'the people' for Second Amendment purposes would exclude him from those rights as well." *Id*. at 102. The *Range* court saw "no reason to adopt an inconsistent reading of 'the people.'" *Id*.

6

Third, the *Range* court cited then-Judge Barrett's reasoning in her dissent in *Kanter*, 919 F.3d at 452, where she "persuasively explained that 'all people have the right to keep and bear arms,' though the legislature may constitutionally 'strip certain groups of that right.'" *Range*, 69 F.4th at 102 (citing *Kanter*). The court also endorsed its own previous precedent stating that the idea that "individuals with Second Amendment rights may nonetheless be denied possession of a firearm is hardly illogical." *Id.* (citation omitted); *see also United States v. Rahimi*, 61 F.4th 443, 451-52 (5th Cir. 2023) (endorsing then-Judge Barrett's interpretation of the phrase "the people" as consistent with *Heller* and *Bruen*).

Finally, *Range* pointed to the expansiveness of the phrase "law-abiding," asserting that the Supreme Court could not mean that any individual who ever ran afoul of any law, however minor, could be excluded from the protections of the Second Amendment. *Range*, 69 F.4th at 102. It also took issue with the vagueness of the phrase "responsible," noting that such a term was susceptible to many different interpretations. *Id.* Ultimately, the *Range* court disagreed with the government's characterization of the scope of the phrase "the people" within the text of the Second Amendment because it would essentially delegate to the legislature who receives the protection of the Second Amendment.

The Supreme Court in *Rahimi* clarified several aspects of *Bruen*'s inquiry. *Rahimi*, 602 U.S. at 691-692, 699-702. First, Rahimi left undisturbed the Court's broad holdings about the scope of "the people" in the Second Amendment. *Id.* at 701-702. *Bruen*'s first step looks to the text itself: if "the Second Amendment's plain text covers an

7

individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. *Rahimi* rejected the government's argument that the Amendment's plain text protects only law-abiding, responsible citizens and explained that this argument did not "derive from [the Court's] case law." *Rahimi*, 602 U.S. at 701-702.

Second, the Supreme Court addressed § 922(g)(8)(C)(i)'s constitutionality using Bruen's methodology: the government must provide evidence of a "historical tradition of firearm regulation" that shows the modern regulation "is consistent with the principles that underpin our regulatory tradition." *Id*. at 698-699. *Rahimi* reaffirmed that "[w]hy and how the regulation burdens the right are central to this inquiry." *Id*. at 692. A law that imposed "similar restrictions for similar reasons" would be constitutional, while one that has a different reason or burdened the right to a greater extent would not. *Id*.; *see also Bruen*, 597 U.S. at 26, 29 (explaining that a regulation must "impose a comparable burden on the right of armed self-defense" and be "comparably justified"). The "why" goes to a law's purpose in achieving a regulatory goal. *Rahimi*, 602 U.S. at 692; *Bruen*, 597 U.S. at 29. And the "how" goes to the weight of the law's burden. That burden includes the kind of showing needed to trigger disarmament, the temporary nature of that disarmament, and the consequences that flow from it. *Rahimi*, 602 U.S. at 698-699. A modern law must meet both prongs of the test. *Id*. at 699-700; *see also Bruen*, 597 U.S. at 29. A law that has a distinct purpose is unconstitutional even if its burden is minor. *Id*. So too is one that applies "for a permissible reason . . . [but] does so to an extent beyond what was done at the founding." *Rahimi*, 602 U.S. at 692.

Third, *Rahimi* clarified that the government must meet its burden with a properly supported historical justification, rather than abstract principles. This historical tradition is primarily discerned through historical regulation itself—a law must be "'relevantly similar' to laws that our tradition is understood to permit." *Id*. In *Bruen*, the Supreme Court carefully reviewed different historical authorities proffered by the State of New York. 597 U.S. at 39–70. The Court did the same in *Rahimi*, finding two historical analogues to support a relevantly similar regulatory tradition: surety laws and going armed laws. Surety laws were "well entrenched in the common law," while going armed laws were authorized in at least 10 jurisdictions. *Id*. at 698-699. The Court explained that both historical traditions supported the same specific principle: disarmament following a level of proof of "demonstrated threats of physical violence" with a firearm. *Id*. at 698. Both laws burdened the Second Amendment right in similar ways to § 922(g)(8). The consequences applied only after "judicial determinations of whether a particular defendant likely would threaten or had threatened another with a weapon"—exactly what § 922(g)(8)(C)(i) requires to be in a predicate protective order, and for the same purpose. *Id*. at 699. Like historical surety bonds, § 922(g)(8)'s restriction is temporary, tied to the restraining order that triggered it. *Id*.

Fourth, Rahimi did not overrule or dispute *Bruen*'s holding or articulation of the test. *Bruen*'s lessons thus remain when assessing whether a regulation is an appropriate analogue. At its core, *Rahimi* reaffirmed *Bruen*'s "commonplace" analogical reasoning. *Id*. at 692. (quoting *Bruen*, 597 U.S. at 28). Finally, the Supreme Court held that the Fifth Circuit erred when it found that historical surety laws were closely related to

9

§ 922(g)(8)(C)(i) but nonetheless held the statute facially unconstitutional based on § 922(g)(8)(C)(ii), which did not require a finding of dangerousness. *See Rahimi*, 61 F.4th at 460 *rev'd by Rahimi*, 602 U.S. at 701-702. The Supreme Court explained that this was the wrong way around—because surety and going armed laws were clearly sufficient to sustain the prosecution against Mr. Rahimi under § 922(g)(8)(C)(i), the harder questions of subsection (C)(ii) should have been left for another day. *Rahimi*, 602 U.S. at 693 ("Our analysis starts and stops with Section 922(g)(8)(C)(i)"); *id.* at 701 ("the panel instead focused on hypothetical scenarios where Section 922(g)(8)[(c)(ii)] might raise constitutional concerns"). *Rahimi* thus upheld a law with a clear historical analogue but had little to say directly about more complicated histories or more significant burdens of the right.

Thus, this Court should find that the Second Amendment extends to individuals with prior felony records.

**B.     The government cannot carry its burden to establish that Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation."**

Because the plain text of the Second Amendment covers the conduct criminalized by Section 922(g)(1), the burden shifts to the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126, 2130; *Atkinson*, 70 F.4th at 1020. The government cannot meet that burden because the historical record demonstrates that there is no longstanding tradition of preventing non-violent felons from possessing guns.

10

In *Atkinson*, the Seventh Circuit was presented with a record developed before the *Bruen* opinion was issued. In deciding to remand to the district court for further briefing, the Seventh Circuit acknowledged that "the government's brief before us includes some historical analysis," but stated that the record was "nothing close to what would satisfy the demanding standard set forth in *Bruen*." Atkinson, 70 F.4th at 1022. In its briefing, the government had provided the court with "some Founding era commentary," and explained that "that felons … were historically subject to execution and estate forfeiture, as well as the loss of other civic rights." *Id.* Given the *Atkinson* court's statement this type of information "falls well short of *Bruen's* demands," *id.*, the burden is on the government to make a more substantial showing before this court. *See Rahimi*, 602 U.S. at 681 (the government bears the burden of showing that it's restriction "is consistent with the Nation's historical tradition of firearm regulation"); *see also United States v. Prince*, No. 23-3155 (pending in 7th Cir.).

The government will be unable to meet this burden because the historical evidence instead shows a *lack* of any tradition restricting felons from gun ownership. In fact, in the early American republic, there were no laws that prohibited non-violent ex-felons from possessing firearms after they had completed their punishment. *See* Conrad Kahn, *Challenging the Federal Prohibition on Gun Possession by Nonviolent Felons*, 55 S. Tex. L. Rev. 113, 127 (2013) ("the federal felon-firearm prohibition only dates back to 1938, and nonviolent felons were not prevented from possessing firearms until the enactment of the 1968 [Gun Control Act]"). Two prescient dissents from the pre-*Bruen* era—which largely predicted *Bruen* and which exhaustively canvassed the historical record—firmly

11

demonstrate that felon-in-possession laws do not have historical support. *See Kanter v. Barr*, 919 F.3d at 454 (7th Cir. 2019) (Barrett, J., dissenting) ("at least thus far, scholars have not been able to identify any such laws" barring non-violent offenders from possessing firearms); *Folajtar v. Att'y Gen. of the United States*, 980 F.3d 897, 915 (3d Cir. 2020) (Bibas, J., dissenting) ("I cannot find, and the majority does not cite, any case or statute from that era that imposed or authorized such bans.").

Under *Bruen*, that lack of regulation is itself entitled to substantial weight. In *Bruen*, the Supreme Court held that "when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Bruen*, 142 S. Ct. at 2131. That is the situation here. Crime and recidivism are general societal problems that have existed throughout history. But American society did not traditionally respond to these problems by barring all non-violent felons from possessing guns.

This conclusion is consistent with the position adopted by the Third Circuit in *Range*. There, the government and amici relied on a 1961 law restricting firearm ownership, and other similar, slightly older laws. The Third Circuit rejected these laws as analogues, stating that it was "confident that a law passed in 1961—some 170 years after the Second Amendment's ratification and nearly a century after the Fourteenth Amendment's ratification—falls well short of 'longstanding' for purposes of demarcating the scope of a constitutional right." 69 F.4th at 104.

Nor did the Third Circuit accept other older historical analogues proffered by the

12

government that prohibited firearm ownership based on race and religion. The *Range* court noted, first, that those restrictions would be unconstitutional today, and second, that the government is required to analogize those prohibited groups to the individual at issue. *Id*. at 104-105. The government failed to carry this burden as to Mr. Range, and in this case must be held to that strict burden as to Mr. Flemming.

And while the majority opinion in *Range* included language stating that its opinion was a "narrow" one, *id.*, the reasoning of the opinion is more broadly applicable. The dissent in that case recognized as much, acknowledging that "the analytical framework [the majority has] applied to reach their conclusion renders most, if not all, felon bans unconstitutional." 69 F.4th at 113 (J. Shwartz, dissenting). This Court should apply that same analytical framework, which leads to the inevitable conclusion that, under the Supreme Court's "text and tradition" approach to the Second Amendment, § 922(g)(1) is unconstitutional as applied to Mr. Flemming.

### C. Section 922(g)(1)'s broad purpose and burden are facially unconstitutional

Mr. Flemming brings a facial challenge. Such a challenge is sometimes said to require "establish[ing] that no set of circumstances exists under which the [challenged law] would be valid," *Rahimi*, 602 U.S. at 681. At the same time, a facial challenge does not require Mr. Flemming to show that the conduct alleged in the indictment is constitutionally protected from any prosecution—only from the law he is charged under. A facial challenge is "a claim that the law or policy at issue is unconstitutional in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019) (emphasis added). Here, § 922(g)(1)'s relevant "applications" include only those facts that are needed to

13

meet its elements and prove the violation. *See City of Los Angeles v. Patel*, 576 U.S. 409, 418 (2015) ("the proper focus of the constitutional inquiry is [prosecutions] that the law actually authorizes, not those for which it is irrelevant"). Section 922(g)(1) is facially unconstitutional because both its purpose and burden are unsupported by our Nation's history and tradition, and so whether a different, narrower tradition could justify a distinct law—like § 922(g)(8)—is insufficient here. *Rahimi* illustrates this principle in practice. Because Mr. Rahimi was prosecuted under § 922(g)(8), his prosecution required showing both that the protective order made the specific finding "that such person represents a credible threat to the physical safety" of another, and that he was still "subject to a court order." 18 U.S.C. § 922(g)(8)(C)(i). The Supreme Court upheld this section against a facial challenge because the specific things the statute was concerned with—the dangerousness finding and the extent of the protective order—fell within the historical tradition. Like the historical surety and going armed laws, Mr. Rahimi's prosecution required a "judicial determination[] of whether a particular defendant likely would threaten or had threatened another with a weapon." *Rahimi*, 602 U.S. at 699. In other words, the facial challenge in Rahimi did not fail because the Court found Mr. Rahimi to generally be "dangerous" or "untrustworthy;" it failed because the statute required a specific order prospectively finding him to be just that. *See also Heller*, 554 U.S. at 630 (explaining that the D.C. statute at issue was unconstitutional in part because a self-defense exception was "precluded by the unequivocal text"). So too in *Patel*. There, the Supreme Court confronted a statutory scheme that authorized suspicionless searches of hotel guest registers. 576 U.S. at 412. It rejected the argument

14

that a facial challenge was impossible because other possible reasons might uphold a particular search, such as exigent circumstances or a valid warrant. *Id*. at 418. The Court looked at the constitutionality of the searches conducted under the challenged law, and not to distinct sources of search authorization that did not apply to the statute. The same principle applies in constitutional challenges to criminal prosecutions.

Mr. Flemming makes this facial showing here. Section 922(g)(1) applies to any individual with a prior conviction punishable by imprisonment exceeding one year, virtually regardless of circumstance. The prosecutions § 922(g)(1) authorizes are thus unconstitutional because their purpose is to broadly disarm all people with felony convictions permanently. That some felony convictions, or some conduct, might sustain a different prosecution under a different statute cannot save § 922(g)(1) after *Rahimi*.

## CONCLUSION

Mr. Flemming is covered by the plain text of the Second Amendment. The Court should find that Section 922(g)(1) is unconstitutional both facially and as applied to Mr. Flemming. In stripping Mr. Flemming of his Second Amendment rights based purely on his prior conviction of a felony offense, § 922(g)(1) violates the historical tradition of the Second Amendment and is unconstitutional. The indictment must be dismissed.

                Respectfully submitted,

            By: /s/ *Hannah Valdez Garst*
                Law Offices of Hannah Garst, P.C.
                121 S. Wilke Rd., Ste. 301
                Arlington Heights, IL 60005
                Attorney for Demario Flemming

## **Certificate of Service**

The undersigned, Hannah V. Garst, hereby certifies that the attached document was filed on March 5, 2025, and was served upon the Court and counsel of record via the CM/ECF filing system.

                                                By:    */s/Hannah Valdez Garst*
                                                Law Offices of Hannah Garst, P.C.
                                                121 S. Wilke Rd., Ste. 301
                                                Arlington Heights, IL 60005
                                                Attorney for Demario Flemming